IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BOARD OF TRUSTEES, | ) | |
| SHEET METAL WORKERS' | ) | |
| NATIONAL PENSION FUND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:14cv0478 (LO/JFA) |
| | ) | |
| v. | ) | |
| | ) | |
| THE COLUMBUS SHOW CASE | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to

Fed. R. Civ. P. 55(b)(2).  (Docket no. 8).  Plaintiff is the Board of Trustees of the Sheet Metal

Workers' National Pension Fund ("plaintiff" or "National Pension Fund") and it seeks a default

judgment against defendants the Columbus Show Case Company d/b/a CSC Worldwide

("CSC") and CSC Specialty Retail Group, LLC ("CSC Specialty") (collectively, "defendants").

Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court

his proposed findings of fact and recommendations, a copy of which will be provided to all

parties.

### Procedural Background

On May 1, 2014, the National Pension Fund filed this action alleging in Count I that

CSC has failed to make certain withdrawal liability payments due to plaintiff, totaling

$1,628,863.67, liquidated damages, interest, attorney's fees, and costs.  (Docket no. 1).  In

Count II the National Pension Fund asserts a claim against CSC Specialty, claiming that CSC

Specialty is the alter ego and mere continuation of CSC, an affiliated business under common management and control with CSC, and, as such, is jointly liable for CSC's withdrawal liability as claimed in Count I. *Id.* Summonses were issued for the defendants on May 1, 2014. (Docket no. 3). The summons, complaint, notice, and financial interest disclosure statement were served on Carl J. Aschinger, Jr., principal of defendant CSC, by personal service on May 15, 2014. (Docket no. 4). The summons, complaint, notice, and financial interest disclosure statement were also served on Mr. Aschinger, as principal of CSC Specialty, by personal service on May 15, 2014. (Docket no. 5). In accordance with Fed. R. Civ. P. 12(a), responsive pleadings were due on June 5, 2014, which is 21 days after defendants were served with the summons and complaint.

Neither defendant has filed a responsive pleading. On June 6, 2014, the National Pension Fund filed its request for entry of default. (Docket no. 6). The request for default represented that each defendant had been served with process and that neither had filed a responsive pleading. *Id.* The Clerk of the Court entered default against CSC and CSC Specialty pursuant to Fed. R. Civ. P. 55(a) on June 9, 2014. (Docket no. 7).

On June 26, 2014, the National Pension Fund filed a motion for default judgment, a memorandum in support, declarations from Alex Dyer and Christopher Leins, and a notice of hearing for July 11, 2014 at 10:00 a.m. (Docket nos. 8–12). The motion for default judgment, supporting memorandum, declarations, and notice were served on the defendants by first class mail on June 26, 2014. *Id.* On July 11, 2014, counsel for the National Pension Fund appeared at the hearing on the motion for default judgment and no one appeared on behalf of either defendant.

2

## Factual Background

The following facts are established by the complaint (Docket no. 1) ("Compl."), the memorandum in support of the motion for default judgment (Docket no. 9), and the declarations filed in support of the motion for default judgment (Docket nos. 10, 11). The National Pension Fund is comprised of individual trustees who are fiduciaries of a multi-employer employee benefit plan as defined by the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3). (Compl. ¶¶ 3, 4). The National Pension Fund is administered in Fairfax , Virginia. (Compl. ¶ 6).

CSC's principal place of business is in Columbus, Ohio and during the relevant time period CSC was an employer in an industry affecting commerce as defined by 29 U.S.C. §§ 1002(5), (11) and (12). (Compl. ¶¶ 7, 8). CSC Specialty is a limited liability company with a principal place of business in Columbus, Ohio. (Compl. ¶ 9). Plaintiff alleges that at all relevant times, defendant CSC Specialty was the alter ego and mere continuation of CSC, had substantially the same management and ownership as CSC, and, as such, is jointly liable for CSC's withdrawal liability. (Compl. ¶¶ 30, 33, 36).

The National Pension Fund brings this action under ERISA seeking a judgment awarding withdrawal liability as a result of CSC's withdrawal from the National Pension Fund. 29 U.S.C. §§ 1132 and 1145. (Compl. ¶¶ 1, 2, 28, 37). Until the date of its withdrawal from the National Pension Fund on or about July 1, 2013, CSC employed employees represented for the purposes of collective bargaining by Sheet Metal Workers' International Association Local Union No. 24 ("Local Union No. 24"). (Compl. ¶¶ 11, 15).[1] CSC was a signatory to and bound by a Collective Bargaining Agreement ("Agreement") with Local Union No. 24 which required

---

[1] As explained in the Dyer Declaration, Local Union No. 24 became the successor party to CSC's Agreement with Local Union No. 287. (Docket no. 10 ¶ 5).

CSC to make contributions to the National Pension Fund on behalf of its employees who were covered by the Agreement. (Compl. ¶¶ 12, 13). The Agreement obligated CSC to abide by the terms and conditions of the Agreement and Trust Agreement establishing the National Pension Fund and to submit monthly reports and payments. (Compl. ¶ 14).

In support of the claim in Count I, plaintiff alleges that on or about July 1, 2013, CSC effected a complete withdrawal from the National Pension Fund as defined in 29 U.S.C. § 1383. (Compl. ¶ 15). The National Pension Fund calculated CSC's withdrawal liability to be $1,628,863.67 pursuant to 29 U.S.C. § 1381(b). (Compl. ¶ 16). On or about August 29, 2013, CSC received a notice and demand for payment of withdrawal liability in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1). (Compl. ¶ 17). This initial notice and demand informed CSC that its withdrawal liability was $1,573,623.94, payable in 56 quarterly payments of $43,072.43 and a final payment of $3,675.81 with a first quarterly payment due on or before September 28, 2013. (Compl. ¶ 18). On or about October 28, 2013, CSC received a revised notice and demand letter from the National Pension Fund, notifying CSC that its withdrawal liability amount had been revised and informing CSC that its withdrawal liability amount was now $1,628,863.67, payable in 73 quarterly payments of $38,546.73 and a final payment of $35,276.48. (Compl. ¶¶ 19, 20). The revised notice and demand also notified CSC that it was delinquent in making its first quarterly liability payment and that it had 60 days to cure the delinquency or it would be in default within the meaning of 29 U.S.C. § 1399(c)(5). (Compl. ¶ 21). In addition to not making any of the payments for withdrawal liability, CSC has not requested plan sponsor review of the withdrawal liability assessment or initiated arbitration of the withdrawal liability assessment, and the time period for doing so under 29 U.S.C. §§ 1399(b)(2)(A) and 1401(a)(1) has expired. (Compl. ¶¶ 22–24). The declaration of Alex

Dyer was submitted with the memorandum in support of the motion for default judgment in which he describes the calculation of the withdrawal liability assessment and the notices provided to CSC. (Docket no. 10).

The National Pension Fund alleges that 29 U.S.C. § 1451(b) provides that failure to make any withdrawal liability payment within the time prescribed shall be treated as a delinquent contribution under 29 U.S.C. § 1145. (Compl. ¶ 26). Pursuant to 29 U.S.C. § 1132(g)(2), the National Pension Fund claims in Count I that it is entitled to a judgment against CSC awarding:  (1) withdrawal liability in the amount of $1,628,863.67; (2) liquidated damages; (3) interest; and (4) the attorney's fees and costs incurred in collection of the delinquent withdrawal liability, including the attorney's fees and costs of this action. (Compl. ¶ 28).

In Count II, the National Pension Fund seeks a determination that CSC Specialty, as the alter ego and mere continuation of CSC, is jointly liable for CSC's withdrawal liability under 29 U.S.C. §§ 1132(g)(2) and 1145. (Compl. ¶¶ 36, 37). Based on this alter ego theory the National Pension Fund seeks a judgment against CSC Specialty for the withdrawal liability plus liquidated damages, interest, attorney's fees, and costs. (Compl. ¶ 37).

In the motion for default judgment, the National Pension Fund states that it is owed $1,628,863.67 for withdrawal liability, $325,773.23 in liquated damages, $70,116.91 in interest through June 25, 2014, and attorney's fees and costs of $8,327.01 through June 25, 2014. (Docket no. 8).

**Proposed Findings and Recommendations**

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to

5

plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F.Supp.2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

### Jurisdiction and Venue

The National Pension Fund alleges that this court has subject matter jurisdiction under Section 502 of ERISA, 29 U.S.C. §§ 1132 and 1451(c). ERISA Section 502 provides that U.S. district courts have jurisdiction over civil actions brought under this title. This case is properly before the court under its federal question jurisdiction pursuant to 29 U.S.C. § 1132(e) since it is brought under ERISA for an alleged failure to pay withdrawal liability.

ERISA Section 502 states that an action under this title may be brought in the "district where the plan is administered" and "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The National Pension Fund states that it is administered in Fairfax, Virginia. (Compl. ¶ 6). Venue is proper in this court and this court has personal jurisdiction over the defendants because the National Pension Fund is administered within the Alexandria Division of the Eastern District of Virginia. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F.Supp. 1040 (E.D. Va.

6

1997) (personal jurisdiction in an ERISA action should be determined on the basis of the defendant's national contacts with the United States pursuant to the Due Process Clause of the Fifth Amendment and ERISA itself provides for nationwide service of process).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendants and that venue is proper in this court.

## Grounds for Entry of Default

The summons and complaint were served in person on a principal of CSC and CSC Specialty on May 15, 2014. (Docket nos. 4, 5). Under Fed. R. Civ. P. 12(a), a responsive pleading was due on June 5, 2014, 21 days after the complaint and summons were served on the defendants. After the defendants failed to file an answer or responsive pleading in a timely manner, the National Pension Fund requested an entry of default on June 6, 2014. (Docket no. 6). The Clerk of the Court entered a default on June 9, 2014. (Docket no. 7).

The undersigned magistrate judge recommends a finding that the defendants were served properly, that they failed to file a responsive pleading in a timely manner, and that the Clerk properly entered a default as to the defendants.

## Liability and Measure of Damages

According to Rule 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because the defendants did not file a responsive pleading and are in default, they admit the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

### Count I

As set forth in the complaint, CSC effected a complete withdrawal pursuant to 29 U.S.C.
§ 1383(b)(2) and is subject to withdrawal liability in the total amount of $1,682,863.67. (Comp.
¶¶ 16, 28). CSC has failed to make any payments pursuant to the payment schedule provided
by the National Pension Fund including the first quarterly payment due on September 28, 2013.
(Compl. ¶¶ 18, 22). As set forth in 29 U.S.C. § 1451, the failure of an employer to make a
withdrawal liability payment is to be treated in the same manner as a delinquent contribution
under 29 U.S.C. § 1145. 29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce
the payment of delinquent contributions in which a judgment in favor of the plan is awarded,
the court shall award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of –
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in
>> excess of 20 percent (or such higher percentage as may be permitted under
>> Federal or State law) of the amount determined by the court under
>> subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

In support of its claim for damages in Count I, the National Pension Fund submitted a
declaration from Alex Dyer. (Docket no. 10) ("Dyer Decl."). In addition to the declaration
from Mr. Dyer, the National Pension Fund submitted a declaration from Christopher Leins
detailing the attorney's fees and costs incurred in this action. (Docket no. 11).

The information contained in the Dyer declaration submitted on behalf of the National Pension Fund establishes that CSC incurred withdrawal liability to the National Pension Fund in the amount of $1,628,863.67. (Dyer Decl. ¶ 8). CSC failed to pay the first quarterly payment and has failed to cure its default after receiving notice and an opportunity to cure. (Dyer Decl. ¶¶ 9–12). The declaration also establishes that the National Pension Fund is owed liquidated damages in the amount of $325,772.73 (calculated at 20% of the withdrawal liability not paid in a timely manner). (Dyer Decl. ¶ 13). Mr. Dyer calculated the interest due on the withdrawal liability using the rate provided in the Agreement of 0.0233% per day, compounded daily, from the date the payment was due through June 26, 2014 as $70,116.91. *Id.*

The National Pension Fund submitted a declaration of Christopher Leins detailing the attorney's fees and costs incurred in this action. (Docket no. 11) ("Leins Decl."). The total amount of the attorney's fees incurred was $7,053.50 for 15.9 hours of attorney time and 20.0 hours of legal assistant time and the amount of costs was $1,273.51 for the filing fees, legal process fees, legal research, overnight delivery, and telephone. (Leins Decl. ¶ 6).[2] The hourly rates charged for the attorney time ranged from $255.00 to $320.00 and the hourly rates for the legal assistants ranged from $145.00 to $155.00. (Leins Decl. ¶ 5). The undersigned magistrate judge has reviewed the declaration of Mr. Leins and recommends that the court find that the amount requested for attorney's fees and costs by the National Pension Fund is reasonable.[3]

---

[2] Attached to the Leins declaration is a matter worked detail report, which reflects time entries and costs for "withdrawal liability."

[3] The Leins declaration does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable hourly rate. The Leins declaration merely states that the hourly rates charged are consistent with prevailing market rates in the Eastern District of Virginia for those of similar skill for ERISA cases without providing any supporting information or basis for that opinion. However, since the defendants have not contested the hourly rates in this case, the undersigned will accept the allegations set

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of the National Pension Fund against the defendant CSC on Count I of the complaint in the amounts shown below, with interest accruing from the date of judgment until paid:

| | |
|---|---|
| Withdrawal Liability | $1,628,863.67 |
| Liquidated Damages | $325,772.73 |
| Accrued Interest (through June 26, 2014) | $70,116.91 |
| Attorney's Fees | $7,053.50 |
| Costs | $1,273.51 |
| *Total* | **$2,033,080.42** |

### Count II

The National Pension Fund alleges that CSC Specialty is the alter ego and mere continuation of CSC, is under common control with CSC, and therefore is jointly liable for CSC's withdrawal liability under 29 U.S.C. § 1301(b).  The National Pension Fund alleges that defendants have common officers, ownership, and management. (Compl. ¶ 31).  The National Pension Fund also alleges that defendants share a common website, have held themselves out to the public as a single-integrated business enterprise, and CSC Specialty operates from the same address as CSC in Columbus, Ohio. (Compl. ¶¶ 33, 34).  These factual allegations are accepted as true since the defendants have not appeared to contest them.  The remaining question is whether these factual allegations are sufficient to support a finding that CSC Specialty is jointly

---

forth by the plaintiff concerning the reasonableness of those rates as true.  The hourly rates and costs requested are consistent with the rates and costs incurred in similar cases and awarded by this court.

liable for the withdrawal liability, liquidated damages, interest, and attorney's fees and costs owed by CSC.

Section 4001(b) of ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.  The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26."  29 U.S.C. § 1301(b)(1).  As set forth in the National Pension Fund's memorandum in support of its motion for default judgment, every court of appeal that has addressed the issue, other than the Eighth Circuit, has applied a relaxed alter ago standard for ERISA delinquent contribution cases. (Docket no. 9 at 9).  Although the Fourth Circuit has not explicitly adopted the relaxed alter ego standard in a withdrawal liability case, this court has applied the standard in entering default judgment against an alter ego entity in a withdrawal liability case.  *See Bd. of Trustees, Sheet Metal Workers' National Pension Fund v. Redbird Heating & Cooling Enterprises, Inc.*, C.A. No. 1:09-cv-0068 (JCC/JFA).  Under the relaxed standard, the court must ask "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision, and ownership."  *NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990).  Given the allegations that at the relevant time defendants had substantially identical management, business purpose, operations, equipment, facilities, supervision, and ownership, and given plaintiff's further allegations that defendants have interrelated operations and have held themselves out to the public as a single-integrated business enterprise, a finding that CSC Specialty is under common control with CSC is appropriate.

11

For these reasons, the undersigned recommends that the court find that CSC Specialty is the alter ego of CSC and that CSC Specialty is jointly liable for the recommended judgment against CSC for withdrawal liability, liquidated damages, interest and attorney's fees and costs. Accordingly, it is recommended that a default judgment be entered in favor of the National Pension Fund jointly against the defendant CSC Specialty for defendant CSC's withdrawal liability in the amounts shown below, with interest accruing from the date of judgment until paid:

| Withdrawal Liability | $1,628,863.67 |
|---|---|
| Liquidated Damages | $325,772.73 |
| Accrued Interest (through June 26, 2014) | $70,116.91 |
| Attorney's Fees | $7,053.50 |
| Costs | $1,273.51 |
| **Total** | **$2,033,080.42** |

### Conclusion

For the reasons set out above, it is recommended that for Counts I and II a judgment be entered in favor of the National Pension Fund against The Columbus Show Case Company d/b/a CSC Worldwide and CSC Specialty Retail Group, LLC, jointly, in the total amount of **$2,033,080.42** with interest accruing from the date of judgment until paid.

12

### Notice

By means of the court's electronic filing system and by mailing a copy of these proposed findings of fact and recommendations to Carl J. Aschinger, Jr., Principal, at The Columbus Show Case Company d/b/a CSC Worldwide, 2252 Club Road, Columbus, OH 43221 and at CSC Specialty Retail Group, LLC, 2252 Club Road, Columbus, OH 43221, and to Columbus Show Case Company, 4401 Equity Drive, Columbus, OH 43228, the parties are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of these proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of these proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on them.

ENTERED this 11th day of July, 2014.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia